**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAMIEN PARKER, individually and<br>on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  14 cv 5396 |
| | ) | |
| v. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| CATAMARAN, LLC, CATAMARAN | ) | |
| PBM OF ILLINOIS II, INC., and | ) | Magistrate Judge Jeffrey T. Gilbert |
| AEROTEK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF THE
PARTIES' COLLECTIVE ACTION FLSA SETTLEMENT**

Plaintiff, Damien Parker, individually and on behalf of all others similarly situated, by his

attorneys, moves for approval of the collective action FLSA settlement reached by the Parties.

In support, Plaintiff states as follows:

**<u>Background</u>**

On July 15, 2014, the Named Plaintiff filed this Action in the United States District Court

for the Northern District of Illinois, Eastern Division, on behalf of himself and others similarly

situated, alleging that Defendants failed to pay him and other similarly situated employees in

accordance with the Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. (the "FLSA") (Count I), the

Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. (the "IMWL") (Count II), and the Illinois

Wage Payment Collection Act, 820 ILCS 115/1 *et seq*. (the "IWPCA") (Count III).  Specifically,

the Named Plaintiff alleged that Defendants knowingly required or permitted the Named

Plaintiff, who worked as a telephone-dedicated employee in the position of member service

representative, and other similarly situated telephone-dedicated employees to perform unpaid

work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions, and completing customer service calls. The Named Plaintiff also alleged that Defendants knowingly required or permitted the Named Plaintiff and those similarly situated to him to perform unpaid work for Defendants on their break periods, including meal breaks. On September 25, 2014, Named Plaintiff filed an Amended Complaint which added additional facts to support his IWPCA claim.

On October 9, 2014, the Catamaran defendants and Aerotek filed their Answers to Counts I and II of Named Plaintiff's Amended Complaint, denying all material allegations set forth in the Action and asserting numerous affirmative defenses. (Doc. No. 46, 49). Defendants also moved to dismiss Count III of Named Plaintiff's Amended Complaint. (Doc. No. 47, 50). On November 3, 2014, the Court granted Defendants' motions and dismissed Count III of Named Plaintiffs' Amended Complaint without prejudice. (Doc. No. 57).

Defendants continue to deny any liability or wrongdoing of any kind associated with the claims alleged by the Named Plaintiff in the Action. Specifically, Defendants deny that their pay practices failed to comply with the FLSA, the IMWL, the IWPCA, or any other federal or state law.

In approximately October 2014, the Parties began discussing the possibility of a resolution of this matter. The Parties actively engaged in extensive informal discovery, and Defendants produced class-wide data regarding the claims. Defendants produced millions of lines of payroll and telephone and computer log in/out data, and thousands of pages of documents including: (i) payroll, timekeeping and computer and telephone log in/out data for putative class members; (ii) a list of all Catamaran call centers where Named Plaintiff and the

putative class members worked; (iii) the total number of workweeks worked by the putative class members during the class period; and (iv) Defendants' employee handbooks, operations manuals, and related documents, as revised during the class period. The parties also separately engaged in formal discovery.

The Parties ultimately retained a nationally recognized wage and hour mediator, Mr. Hunter R. Hughes, Esq., to assist them in resolving their claims. The Parties participated in a full-day, in-person mediation with Mr. Hughes on March 18, 2015, and reached an agreement in principle on the terms of a collective and class action settlement to settle the claims alleged in the Amended Complaint as to the Named Plaintiff and the putative class members.

The Parties have worked to finalize the terms of the settlement agreement attached hereto as Exhibit 1. Named Plaintiff and his counsel now present to this Court the Parties' Collective Action Settlement Agreement (the "Settlement Agreement"), which they believe is fair, reasonable, and equitable for the Named Plaintiff and the FLSA Class Members. Named Plaintiff seeks approval of the FLSA collective action portion of the Parties' Settlement Agreement, and requests that this Court enter an Order, substantially in the form attached hereto as Exhibit 2, that grants such relief.

### Collective Action Certification For Settlement Purposes Only

Named Plaintiff seeks collective action certification for settlement purposes only of the Settlement Class described in the Settlement Agreement. Section 216(b) of the FLSA permits a plaintiff to file a collective action, on behalf of himself and other "similarly situated" employees, to recover unpaid overtime wages and liquidated damages from employers who violate section 7 of the FLSA. 29 U.S.C. § 216(b). For purposes of this settlement, the standard for establishing collective action certification under 29 U.S.C. § 216 with respect to the Settlement Class is met.

Therefore, the Parties have agreed to stipulate to collective action certification. More specifically, the Parties stipulate and agree,[1] for settlement purposes only, that the FLSA Class Members are similarly situated. Accordingly, this Court should grant collective action certification for settlement purposes only.

## This Court Should Approve the Parties' Settlement

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class and collective actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy … favors settlements, particularly where complex class action litigation is concerned"); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). The proposed settlement, therefore, is the best vehicle for the FLSA Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

Summary of Settlement Terms

The Parties' Settlement Agreement provides a fund of approximately $476,012.42 to be paid to the FLSA Class Members. Ex. 1, at ¶ V.6. Each FLSA Class Member's estimated maximum share of the settlement fund will be calculated based on the number of weeks the FLSA Class Member worked for Defendants during the period of July 15, 2011 to February 6, 2015 (the "Class Period"). *Id*. at ¶ V.9(a). Each FLSA Class Member will receive an amount of $2.575 for each week worked during the Class Period. *Id*. In the event an FLSA Class Member's estimated Settlement Payment as calculated above is less than One Hundred Dollars

---

[1] Defendants do not believe that certification would be proper absent a settlement, and reserve the right, should this Court fail to grant approval of this Settlement, to contest every aspect of collective action certification under 29 U.S.C. § 216.

($100.00), the FLSA Class Member will receive a minimum Settlement Payment of One Hundred Dollars ($100.00). *Id.* Thus, each FLSA Class Member will receive the greater of (i) One Hundred Dollars ($100.00), or (ii) the Settlement Payment amount as calculated according to the formula set forth above. *Id.* The release that the FLSA Class Members will be required to sign is limited and only releases wage and hour claims that could have been brought in this case.[2] *Id.* at ¶ V.3.

The Parties have selected Dahl Administration LLC to administer the Settlement. The Claims Administration cost to administer the settlement to all of the approximately 4,150 Class Members covered by the Settlement (*i.e.*, both the FLSA Class Members and the IMWL Class Members) will not exceed $43,600.00. *Id.* at ¶ V.6.

The Named Plaintiff also seeks approval of an Incentive Award in the amount of $6,500.00 to be paid to him, and an Incentive Award in the amount of $3,500.00 to be paid to Opt-In Plaintiff LaShunda Gadison, in recognition of their service to the class. *Id.* at ¶¶ V.6, V.11(c).

The Parties, again with the assistance of Mr. Hughes, also negotiated Class Counsel's request for attorneys' fees and costs. Defendants have agreed not to oppose Class Counsels' request for an award of attorneys' fees of $500,000.00, and costs in the amount of $7,415.00.[3] *Id.* at ¶¶ V.6, V.11(a-b). As explained in detail in Plaintiff's Motion for Preliminary Approval of the Parties' Class Action Settlement filed contemporaneously herewith, the amount of fees and costs sought by Class Counsel is reasonable.

[2] Any FLSA Class Member who does not cash his or her individual Settlement Payment will not release any claims against Defendants.

[3] Class Counsel's request for fees is inclusive of the settlement of both the Rule 23 claims and the FLSA claims in this litigation.

5

The FLSA Requires Approval of Settlements

It is well established that settlements in a Fair Labor Standards Act case must be approved by either a court or the U.S. Department of Labor. *See Walton v. United Consumer's Club, Inc.*, 786 F.3d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.3d 1350, 1352-53 (11th Cir. 1982)). When reviewing an FLSA collective action settlement, a court normally considers the following factors:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Burkholder*, 750 F.Supp.2d at 995. Here, each of these factors weighs in favor of approving the settlement.

### 1. Complexity, Length, and Expense of Further Litigation

The first factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F.Supp.2d 1002, 1019 (N.D.Ill. 2000). Absent settlement, the Parties would be required to incur the time and expense of the Named Plaintiff pursuing collective action certification of this action and, if granted, of administering notice to the members of the FLSA Class and permitting them an opportunity to opt-in to this action. Thereafter, the Parties would be required to prepare for the burden and expense of depositions occurring in various states, summary judgment motions, motions to decertify any classes certified, and possibly a trial to be conducted relating to the claims of potentially thousands of FLSA Class Members and the

defenses raised by Defendants with respect to the FLSA Class and to individual FLSA Class Members. Post-trial litigation, including appeals, would be a near certainty. Thus, additional litigation undoubtedly would increase the expenses of this litigation but would not reduce the risks the litigation holds for the class. *See id; see also Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Accordingly, the remaining burden, expenses, and risks for the FLSA Class Members would be substantial, as continued litigation will require resolution of complex issues at considerable expense.

### 2. The Reaction of the Class to the Settlement

Class Counsel have been in contact with the Named Plaintiff and the Opt-In Plaintiff throughout the duration of the litigation, and have addressed any questions raised by them. Class Counsel are unaware of any opposition to the Settlement. Ex. 4, Bormes Decl., at ¶ 13; Ex. 5, Ryan Decl., at ¶ 13.

### 3. The Stage of the Proceedings and the Discovery Completed

This complex collective action was resolved only after nearly one year of hard fought litigation involving extensive research, data analysis, and discovery. Thus, the stage of litigation has advanced to a state that Class Counsel could fully and fairly evaluate the value of the settlement, and believe it to be in the best interest of the FLSA Class Members. Ex. 4, Bormes Decl., at ¶¶ 9-12, 18, 22; Ex. 5, Ryan Decl., at ¶¶ 8-10.

### 4. The Risks of Establishing Liability and Damages

Named Plaintiff remains steadfast about the validity and merits of his claims. However, Named Plaintiff acknowledges that significant risks remain regarding whether he ultimately will prevail on those claims. Those risks include that this Court may rule that Named Plaintiff will not be able to establish liability in this matter or recover damages regarding each of the FLSA Class Members' claims if Defendants prevail on their affirmative defenses. For example,

Defendants have asserted that the amount of time it took the FLSA Class Members to complete the off-the-clock work alleged in this lawsuit was *de minimus*, and therefore not compensable. Thus, if Defendants prevail on their affirmative defenses, a significant number of the FLSA Class Members' claims may be dismissed. Accordingly, the risks of establishing liability and damages here are significant, and this factor weighs in favor of approving the settlement that provides significant benefits for the FLSA Class Members.

### 5. The Risks of Maintaining the Collective Action Through the Trial

Named Plaintiff and his counsel also recognize the risks of obtaining and maintaining this action as a collective action through trial. Defendants contend that numerous individual issues predominate over any common issues, and have stated that they will oppose collective action certification if the settlement is not approved. As set forth above, Defendants also have asserted that individual issues predominate regarding whether each FLSA Class Member's claim can proceed, or whether such claims are barred by the *de minimus* doctrine. Defendants have also raised numerous other defenses in this litigation that have the potential to hinder certification of a collective action or lead to decertification of a certified class. For example, Catamaran has stated that it acquired several call centers during the relevant period, and that each center had different policies, practices, and software systems. As a result, Catamaran has asserted that certification would not be appropriate in this matter. Furthermore, Aerotek has asserted, among other things, that all Aerotek workers were required to record all time worked, that its timekeeping system allowed all contractors to record all hours worked, and that significant variance exists in the timekeeping practices of the purported collective action members, making certification inappropriate.

While Named Plaintiff disagrees with Defendants regarding the above issues, there are always risks involved in obtaining collective action certification, having a certified class

decertified after additional discovery, or summary judgment being granted against the FLSA Class Members. For these reasons, Named Plaintiff and his counsel believe the settlement to be in the best interest of the Parties, and urge this Court to approve it. Ex. 4, Bormes Decl., at ¶¶ 18, 22; Ex. 5, Ryan Decl., at ¶¶ 13, 16.

6.   <u>The Ability of the Defendants to Withstand a Larger Judgment</u>

Defendants have agreed to pay $476,012.42 to resolve the claims of approximately 3,206 FLSA Class Members who worked for Defendants during the class period. Ex. 1, ¶ V.6. Each FLSA Class Member will receive an amount of $2.575 for each week s/he worked for Defendants during the Class Period. *Id*. at ¶ V.9(a). In the event an FLSA Class Member's estimated Settlement Payment is less than One Hundred Dollars ($100.00), the FLSA Class Member will receive a minimum Settlement Payment of One Hundred Dollars ($100.00). *Id*. The formula used to determine each FLSA Class Member's share of the settlement fund is designed to result in the complete distribution of the fund, and checks will be mailed to each FLSA Class Member directly if the Settlement is approved, rather than requiring the FLSA Class Member to submit any form to claim the funds available to him or her and then wait for a check to be issued. Accordingly, while Defendants theoretically may be able to withstand a larger judgment, the amount of the fund to be paid to the FLSA Class Members is fair and reasonable, and should be approved.

7.   <u>The Range of Reasonableness of the Settlement Fund</u>

The settlement fund in this case is within the range of reasonableness. The Parties have agreed to a total settlement fund in the amount of approximately $476,012.42 to resolve the FLSA Class Members' claims. Ex. 1, ¶ V.6. In Class counsels' experience, and given the serious and material risks of litigation in general and of this case in particular, the amount of the fund is an excellent result for the class members. Ex. 4, Bormes Decl., at ¶¶ 18, 22; Ex. 5, Ryan

9

Decl., at ¶¶ 13, 16.  When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight.  *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1020; *see also Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 97057 at *18 (S.D.Ill., June 6, 2006) (Wilkerson, J.).

            8.    The Range of Reasonableness of the Settlement Fund
                  in Light of All the Risks of Litigation

Named Plaintiff has described above the reasonableness of the settlement fund, and the inherent risks that exist for him and the FLSA Class Members if the litigation were to continue. Given that: (i) there is a risk that the Court will deny conditional certification and/or eventually decertify the class; and (ii) the FLSA Class Members' claims have the potential to be subject to and significantly diminished by Defendants' various affirmative defenses, including the *de minimis* doctrine, the settlement reached is fair and reasonable, and provides an excellent result for the FLSA Class Members.  Named Plaintiff and his counsel respectfully request that this Court approve the settlement.

### The Proposed Administration Process and Notice to FLSA Class Members

The Parties have agreed to use Dahl Administration LLC as the Claims Administrator in this matter.  The duties of the Claims Administrator are set forth in Paragraphs V.7-11 and V.13-16 of the Settlement Agreement.  Defendants agree to cooperate with the Claims Administrator to ensure that it has all of the information reasonably necessary to perform its tasks.

The Parties' proposed notice provides that the FLSA Class Members would be informed of and given the opportunity to participate in this settlement by receiving the following documents via first-class mail: (i) a Notice of Settlement which explains the terms and conditions of the settlement to the FLSA Class Members (the "Collective Action Notice"), the proposed form of which is attached hereto as Exhibit 3; and (ii) a check for the total of amount of the

Settlement Payment each FLSA Class Member is eligible to receive under the settlement, as identified on Exhibit 1 to the Settlement Agreement.

The proposed Class Notice includes all essential information about the settlement, including the persons affected, the nature of the action, an explanation of how to participate in the settlement, and an explanation of how to obtain additional information relating to the settlement from the Claims Administrator and Class Counsel.

With respect to the mailing of the Class Notice and Settlement Payment, the Settlement Agreement requires the Claims Administrator to receive from Defendants the last known addresses of the FLSA Class Members and to then run the addresses through the National Change of Address database. After updating the addresses, the Claims Administrator will send the Class Notice and Settlement Payments to the FLSA Class Members via first class mail. In order to participate in the settlement, the FLSA Class Member must simply cash the Settlement Payment. FLSA Class Members do not need to submit any additional forms to participate in the settlement or receive their Settlement Payments.

If any mailing of the Class Notice and Settlement Payment is returned as undeliverable, the Settlement Agreement requires the Claims Administrator to then perform an entry level skip trace and resend the Class Notice and Settlement Payment based on the new address obtained.

### Incentive Payments, Attorneys' Fees, and Costs

As set forth above, Named Plaintiff seeks Incentive Payments to be paid to him and the Opt-In Plaintiff, as well as an award of attorneys' fees and costs, from the Settlement Fund. As explained in detail in Plaintiff's Motion for Preliminary Approval of the Parties' Class Action Settlement filed contemporaneously herewith, the amounts of the Incentive Payments, attorneys' fees and costs sought by Named Plaintiff are reasonable.

**Conclusion**

For all of the reasons set forth above, this Court should approve the FLSA Settlement reached by the Parties.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court (i) enter the Order attached hereto as Exhibit 2 approving the Parties' Collective Action Settlement Agreement; and (ii) grant such further relief as this Court deems equitable and just.

Respectfully submitted,

DAMIEN PARKER, individually and on behalf of a class of persons similarly situated,

/s/ James X. Bormes
One of Plaintiff's Attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com